In re Rankin.

---

## In re Rankin.

*March 27 — April 11, 1893.*

*Voluntary assignment: Discharge of assignor: Burden of proof: Fraudulent omission of property from inventory.*

85    15
86   347,

85    15
102   562

1.  Under sec. 1702p, S. & B. Ann. Stats., upon the application of an insolvent debtor for a discharge from his debts the burden of proof is upon him to show that he has "in good faith made a voluntary assignment for the benefit of his creditors, and has in all respects complied with the laws of this state in relation to voluntary assignments," etc.
2.  Upon the evidence in this case,— tending to show, among other things, that after he became insolvent the debtor returned to his brother notes given by the latter amounting to $210; that when he made the assignment he intentionally failed to inventory a debt of $700 due to him from his brother, with the intent of concealing its existence; and that he gave to his creditors a false account of the causes of his failure and of the transactions with his brother,— it is *held* that a discharge was properly denied.

APPEAL from the Circuit Court for *Eau Claire* County. January 26, 1891, *Rankin*, the petitioner, made a voluntary assignment for the benefit of his creditors of his prop-

erty to Arthur Smith, who gave bond, and accepted the trust, and proceeded to perform the same. After his final report had been filed, and on the 4th day of August, 1891, *Rankin* applied to the circuit court pursuant to the provisions of ch. 385, Laws of 1889, as amended by ch. 83, Laws of 1891, for a discharge from his debts; and an order to show cause was made and published accordingly, to be heard September 28, 1891. E. H. Van Ingen & Co., the largest creditors of said *Rankin*, and who had proved up their claim against him, filed objections to his discharge, in substance, that said *Rankin* owned and had in his possession and under his control a large amount of property, the possession of which he had never surrendered or delivered to said assignee under said assignment, but refused so to do, and that he had not included said property in his inventory of assets filed with the clerk of the court, as required by law; that at the time of making the assignment one A. H. Rankin, his brother, was indebted to him for money loaned him in a sum exceeding $750, which indebtedness said assignor had not included in his inventory of assets, nor surrendered to his assignee, but fraudulently and collusively withheld the same from his inventory of assets for the purpose of defrauding his creditors; and they denied the allegation in the petition that *Rankin* had not at any time or in any manner whatsoever disposed of or made over any part of his estate for the future benefit of himself or family, or in order to defraud any of his creditors.

The trial of the issues so made took place before the court, and the petitioner was the only witness examined. The court found that at the time of making his assignment said *Rankin* owned and had under his control certain property, the account of which he had never surrendered or delivered to his assignee in said assignment, and that at the time of making the same he intentionally omitted to

In re Rankin.

include in his inventory of assets an indebtedness due him from one A. H. Rankin of about $700; that he intention-ally omitted to include the same in the inventory, and intentionally withheld the same from his list of creditors; and, as a conclusion of law, that he was not entitled to a discharge from his debts; and so his application was denied. From this order of denial the petitioner appealed.

It appeared that at the time of making the assignment his debts amounted to $5,089, and the nominal amount of his assets was about the same amount. He had made written statements to the contestants, dated January 11, 1889, August 14, 1889, and August 18, 1890, showing that at these respective dates he was worth in property over and above his debts the sums of $6,470.14, $6,015.05, and $6,033.91, respectively. Two days after making the assignment he wrote to the contestants that he had made a voluntary assignment, attributing his failure to family matters; that he had been obliged to help his brother to some money, and discounted notes for him on sixty days; that the notes came back protested, and he had to pay them; that he thought he could pull through and pay his debts, "but trade has not been as good as usual this fall in this country on account of the mild weather and no snow, and collections bad, together with large expenses running two houses." He testified that he gave his brother money which he borrowed from a friend; that he had his personal note, which he gave some time in the spring of 1890, for it. "I gave him back the note shortly after he gave it. I knew he could not pay it, because he was very hard up." This was along in April or May, 1890. He denied in his testimony that he discounted any notes for him. Said he did not know what he meant when he said in the letter that he had done so. That the letter was written for an object, to a certain extent, that "I might make some settlement and go on in business. The statement that I

In re Rankin.

discounted some notes for my brother on sixty days, and that the notes were not paid and came back protested, and that I paid them, is not a fact, but not altogether fabrication." That his object in writing a letter was to see if he could not arrive at some favorable settlement. "My brother's note was not scheduled. I did not consider he owed me anything when I made the assignment. I gave it back to him before it became due. After making the assignment, I told Mr. Leahey, one of the contestants, about this note, and that my brother owed me about $700. I told him that because he did owe it to me. This was early in February, after I made the assignment. Mr. Leahey made a proposition to take this indebtedness and apply it on my debt to him. I told him that I did not have the notes. I had returned them to my brother, and did not consider he owed me a dollar; that my brothers would help me out when I needed anything, if they were able; that what belonged to one belonged to another. I arrived at the conclusion that my brother did not owe me anything when I got the letter from him that he had had hard luck, and I sent him back the note and told him he did not owe me a cent; that it was all right; not to worry about it. I was then endeavoring to see what I could do towards settling with my creditors. I told him that he did not owe me anything. I told him that he had owed me about that amount." It was admitted that the indebtedness of his brother to him was not scheduled. He explained the discrepancy between his assets, as stated in the various statements that he had made, and the amount on hand when he made his assignment, by saying that he had had a great many expenses, two families on his hands, both sick most of the time, and spent a good deal of money himself, some foolishly, perhaps; that he did not know he was insolvent until he took the invoice a few days before he made the assignment, and did not know whether he was insolvent or not at the time he returned the notes

to his brother. He admitted that the statements he wrote to the contestants January 28, 1891, concerning the transaction with his brother, were not strictly true; that he thought that was material only to himself; that he did not consider the account against his brother worth anything; that the reason it was omitted from the inventory was that he had given it up a good while before, and never thought he owed him anything, because they had always been in the habit of helping each other out in many ways. He denied that he had any intention to defraud his creditors by the omission. The examination of the petitioner was quite elaborate, and extended over a variety of circumstances, which need not be more particularly stated.

For the appellant there was a brief by *Wickham & Farr*, and oral argument by *James Wickham*. They contended, *inter alia*, that the insolvent had complied with the laws of the state in relation to assignments, even if his inventory was not absolutely correct. Under sec. 1697, R. S., a mere mistake in the inventory, whether of law or of fact, does not invalidate the assignment. *Brahe v. Eldridge*, 17 Wis. 184; *Farwell & Co. v. Gundry*, 52 id. 268; *Batten v. Smith*, 62 id. 92. And even under sec. 4284 the failure to include property in the inventory must be with fraudulent intent in order to operate as a defense to the application for a discharge. *In re Mabbett*, 73 Wis. 351. This is the general rule both in insolvency and bankruptcy proceedings. *Whiton v. Nichols*, 3 Allen, 583; *Loud v. Pierce*, 25 Me. 233; *Steene v. Aylesworth*, 18 Conn. 244; *Thomas v. Jones*, 39 Wis. 124; *Symonds v. Barnes*, 59 Me. 191, 8 Am. Rep. 418; *Burnside v. Brigham*, 8 Met. 75; *Mitchell v. Singletary*, 19 Ohio, 291; *Payne v. Able*, 7 Bush (Ky.), 344, 3 Am. Rep. 316; *In re Parker*, 4 Biss. 501; *Hempsted v. Wis. M. & F. Ins. Co. Bank*, 78 Wis. 375.

For the respondents there was a brief by *Geo. C. & Fred A. Teall*, and oral argument by *Fred A. Teall*.

PINNEY, J.  By secs. 1702*e*, 1702*f*, S. & B. Ann. Stats., as amended by ch. 83, Laws of 1891, it is provided, in substance, that an insolvent debtor desiring to be discharged from his debts may, within one year after filing his voluntary assignment for the benefit of his creditors as required by law, and before the final settlement of the accounts of his assignee thereunder, file in the office of the clerk of the court where his assignment was filed, and present to the circuit court or presiding judge thereof, his application for such discharge, stating therein the date of filing such assignment, the clerk's office where filed, the name and post-office address of the clerk and of the assignee.  He is required to sign the application, and annex thereto an affidavit subscribed and sworn to by him, substantially as stated in the form prescribed by sec. 1702*f*, and, among other things, to the effect "that the inventory of my estate and the list of my creditors filed in the office of the clerk of the circuit court as a part of my assignment are as accurate and complete statements of all my property, except such as is exempt from sale on execution by the laws of this state, and of my creditors, as I can make; that I have not at any time or in any manner whatsoever disposed of or made over any part of my estate for the future benefit of myself or of my family, or in order to defraud any of my creditors," etc.   Provision is made for a trial or hearing, and any creditor of the insolvent may file and present a verified answer, setting forth the grounds of his objection to such discharge.  Sec. 1702*h*.  And by sec. 1702*p* it is provided that, "*if it shall appear* upon such hearing or trial that such insolvent debtor has in good faith made a voluntary assignment for the benefit of his creditors, and has in all respects complied with the laws of this state in relation to voluntary assignments, and with ch. 385, Laws of 1889, such court or judge shall grant such insolvent debtor a discharge from his debts."   Sec. 1697, S. & B. Ann. Stats.,

provides that the assignor in a voluntary assignment for the benefit of his creditors " within twenty days of the execution of the assignment shall make and file in the office of the clerk a correct inventory of his assets, . . ; which inventory shall be verified by his oath," etc., but "no mistake therein shall invalidate such assignment or affect the right of any creditor."

A careful consideration of the examination of the petitioner has satisfied us that he wholly failed to make out a case for his discharge, and that it was rightly denied. The evidence sustains the finding of the circuit court. It is evident that when the petitioner returned to his brother his notes amounting to $210, and made, as he claims, a gift of them to him, he was in straitened circumstances, and the evidence tends to show that he was then actually insolvent; and when he made his assignment about six months thereafter he failed, as we think intentionally, to inventory the debt of about $700, which was due to him from his brother, with the intent of concealing its existence, or to prevent its collection by his assignee for the benefit of his creditors. He is not able to say positively that he was solvent when he made the alleged gift of the notes to his brother, and the evidence tends to show that some of the $6,000 of his indebtedness when the assignment was made existed at the time of the alleged gift. He had no right to be generous to his brother at the expense of his creditors. He makes no satisfactory excuse for his admitted failure to inventory the debt to the amount of about $700 against his brother as a part of his assets when he made his assignment, as the law made it his duty to do. His admittedly false account of the causes of his failure and of the facts in relation to his transactions with his brother, contained in his letter, written two days after the date of the assignment, to the contestants, with subsequent prevarications in relation to these matters, give the case a most unfavorable

aspect, and justify the belief that he did not make any gift, genuine or real, to his brother of the notes or of his indebtedness to him. Further discussion of his testimony is not necessary. It is very probable that he made his assignment for the purpose of securing a compromise with his creditors at fifty cents on the dollar, if possible, and made the untrue representations contained in his letter for the same purpose. We cannot say from the evidence that he "in good faith made a voluntary assignment for the benefit of his creditors," and that he "has in all respects complied with the laws of this state in relation to voluntary assignments, and with ch. 385, Laws of 1889." The burden of proof on the hearing of such a petition as this is on the petitioner. He has not satisfactorily made out his case. The finding of the circuit court is justified by the evidence, and the court rightly denied the discharge applied for.

*By the Court.*— The order of the circuit court is affirmed.