In re Callahan.

—————

IN RE CALLAHAN.

*March 15 — April 4, 1899.*

*Insolvent debtors: Discharge: Burden of proof: Practice: Inventory: Exemptions: Appeal: Findings.*

| | |
|---|---|
| 102 | 557 |
| 113 | ⁵678 |
| 102 | 557 |
| j116 | ⁵444 |

1. Although the requirements of ch. 179, R. S. 1878, in respect to an insolvent debtor seeking a discharge from his debts literally relate only to the procedure, namely the filing of the necessary papers, etc., yet under the provision of sec. 4296, that an assignment shall be directed if it shall appear that the insolvent "has in all respects conformed to the *matters required of him* in this chapter," not only the filing of the papers should be shown but also the existence of the facts required to be stated therein.

2. The burden of proof is at all times upon the debtor in such a case, and the court is entitled to the utmost frankness and the fullest explanation before it can be satisfied of the material facts, especially if any suspicious circumstances appear.

3. The uncorroborated testimony of the debtor in such a case, that he was a physician and commenced practice in 1891; that his business had been prosperous, so that up to 1896, the year after a claim for malpractice was made against him, he had not only supported his family and accumulated reasonable library and apparatus, but had built an expensive homestead costing some $4,800, and had paid over to his wife some $2,000 claimed to have been borrowed of her; and that at the time of his petition, but a little more than a year thereafter, he had absolutely nothing except a list of accounts worth but $100 or $200, is *held* insufficient to warrant his discharge, especially when discredited by the facts that he ceased to keep a bank account almost immediately after the rendition of a large verdict against him on the claim for malpractice; that he kept none thereafter, although one was kept by his wife; that no explanation whatever was given of the disposal of his professional income since that time; that he accounted for the loss of his case book in which charges for professional services were made by the improbable story that it had been stolen, and testified that the inventory of 125 debtors owing for professional services was made from memory after the alleged theft.

4. It is better practice under ch. 179, R. S. 1878, for the insolvent debtor to comply with the letter of the statute and schedule "all his estate," including exempt property, even if it is not absolutely necessary to include the exempt property.

5. The decision of the trial court, if supported by the evidence, will not be reversed for want of findings of fact, especially in a special proceeding.

APPEAL from an order of the circuit court for La Crosse county: O. B. WYMAN, Circuit Judge. *Affirmed.*

On December 28, 1897, *John L. Callahan,* a physician in La Crosse, filed his petition alleging insolvency and praying a discharge from his debts under ch. 179, R. S. 1878. His schedule of creditors contained a few accounts for household expenses aggregating about $180, a secured debt to a bank of $110, and a judgment for $3,971.42 recovered in the circuit court for La Crosse county on October 19, 1897, upon a

verdict rendered May 17, 1897. The schedule of assets consisted of about 125 open accounts for professional services, a silver watch, and some office furniture. It appeared by his testimony that he had, in addition, items of personal property omitted as exempt from execution,— professional library, $150 or $200; surgical instruments, $150; operating chair, $50; two horses, $100; a buggy, $25; and a cutter, $25. There was substantially no evidence except his own testimony, from which it appeared that he completed his medical course and settled in La Crosse in 1891, where his practice very soon became lucrative; that in October, 1895, he attended professionally *Emily A. Peterson;* and that on December 28, 1895, he received a demand from her attorneys to settle a claim for malpractice in treating her, which afterwards resulted in the judgment above mentioned, and also in a suit by her husband for damages in the same connection. He testified that on coming to La Crosse he was indebted to his wife for moneys obtained from her to purchase a former homestead in Merrill, and to support himself while pursuing his medical studies, in about the sum of $2,000, and that he had paid that to her in the interval commencing in 1891; that in December, 1895, to apply on that debt, he assigned to her a mortgage of $235. In 1896 he deeded to her his homestead in La Crosse, representing a cost of some $4,800, wholly without consideration. It also appeared that his wife made a transfer in May, 1897, of a $400 mortgage, and of $1,000 par value of bank stock standing in her name. These transactions were discovered from records, and only brought out on cross-examination. Two or three additional accounts for professional services were not included in the inventory. The petitioner offered as an explanation that in August, 1897, his office was entered, and his case book, in which were his only memoranda of the accounts due him, together with $280 in gold that day borrowed from bank, were stolen, and that he had no mem-

oranda whatever of the debts due him, except a few bills which he had made out just before the book was stolen. He stated that the list of accounts attached to his petition was made up from memory. He was subjected to a vigorous cross-examination as to the fact of the indebtedness to his wife, and the manner of payment, which he stated was completed in November or December, 1895, and in 1896; the $235 mortgage above mentioned being the last payment. The evidence tended to show a value for his accounts receivable, scheduled, ranging from $80 to $350. *Mrs. Peterson* filed a *remittitur* of all of her judgment in excess of $700, whereby it is claimed the indebtedness was so reduced that petitioner was no longer insolvent. The court filed no findings of fact, but entered an order that the petition be not granted, and the proceeding be dismissed, and that *Mrs. Peterson*, the opposing creditor, have judgment for costs, from which order this appeal is taken by the petitioner.

*Thomas Morris*, for the appellant.

For the respondent there was a brief by *Winter, Esch & Winter*, and oral argument by *John J. Esch*.

DODGE, J. Ch. 179, with reference to the discharge of insolvent debtors, although it has occupied a place in the statutes since 1849 without very much change, and has existed substantially in New York from very early times, has received but little consideration or construction in this court. Sec. 4296 provides that when it shall satisfactorily appear to the court or judge that the insolvent is justly and truly indebted to the creditors in the sums mentioned in his schedule and affidavit, that such insolvent has honestly and fairly given a true account of his estate, and has in all things conformed to the matters required of him in this chapter, such court or judge shall direct an assignment of all the estate except such as is exempt from execution; and sec. 4299 provides that the court shall grant a discharge upon the filing of the

certificate of the assignee that the assignment has been exe-
cuted and the assets turned over. It will be observed that
the only conditions literally specified to be fulfilled are that
it shall satisfactorily appear that the insolvent has (1) "hon-
estly and fairly given a true account of his estate," and (2)
"has in all things conformed to the matters required of him
in this chapter." It is true the requirements of the chapter
literally relate only to the procedure, namely, the filing of
the petition and schedules, accompanied by a specified affi-
davit, and the giving of notice; but the purpose of the stat-
ute, obviously, cannot be satisfied unless the petitioner shows,
not only that he had filed such necessary papers, but that
the facts required to be stated therein exist. *German Amer-
ican Bank v. Butler-Mueller Co.* 87 Wis. 467. This is ren-
dered all the more clear by sec. 4302, which authorizes a
discharge, if granted, to be set aside if petitioner swore
falsely in his affidavit annexed to his petition. That affi-
davit must state, *inter alia,* that petitioner has not at any
time or in any manner disposed of or made over any part of
his estate for the future benefit of himself or his family or
in order to defraud any of his creditors, and that he has in
no instance created or acknowledged a debt for a greater
sum than he honestly owed.

The court below entered an order denying the petition,
without making any finding of facts,— a practice not to be
encouraged, as it leaves this court without information of
the conclusion reached by the trial court as to the weight of
evidence or credibility of witnesses on the issues of fact
tried, if, as in this case, there be more than one. *Dietz v.
Neenah,* 91 Wis. 422, 425. The rule is well established, how-
ever, that the decision will not be reversed for want of find-
ing of facts, if the evidence supports it (*Disch v. Timm,* 101
Wis. 179), especially in a special proceeding (*Gill v. M. &
L. W. R. Co.* 76 Wis. 293).

Remembering that the burden of proof is at all times

upon the petitioner who invokes the extraordinary relief authorized by ch. 179 (*In re Rankin*, 85 Wis. 15), and that the court is entitled to the utmost frankness and the fullest explanation before it can be satisfied of the material facts, especially if any suspicious circumstances appear, the evidence fails to satisfy us either that the petitioner has honestly and fairly given a true account of his estate, and has made a true inventory of all of his estate, and of books, vouchers, and securities relating thereto, or that he has not in any manner disposed of or made over any part of his estate for the future benefit of himself or family or in order to defraud his creditors.    It appears from petitioner's own evidence that his business had been prosperous, so that, up to the year following the time when the claim for malpractice was made against him, he had not only supported his family and accumulated reasonable library and apparatus, but had built an expensive homestead costing some $4,800, and had paid over to his wife, according to his own statement, some $2,000, and that at the time of his petition, but a little more than a year thereafter, he had absolutely nothing, except a list of accounts worth, according to his own testimony, but $100 or $200.    This story would be credible only if fully confirmed by other evidence than the petitioner's own testimony.    When it is discredited by the fact that his bank account, theretofore kept, ceased almost at the moment of the rendition of a large verdict against him; that his book in which the charges were made for professional services, from which he had been able to save these considerable sums of money in the past, had disappeared, and its disappearance was accounted for only by his own statement of a theft,— improbable, because the book was of no possible use to any one else; that since about the time of the verdict no explanation whatever was given of the disposal of his professional income, no bank account being kept by him, while one was kept by his wife; accompanied by the

In re Callahan.

fact that according to his own story the inventory list of 125 debtors was made, after the alleged theft of his account book, from memory,— we are not satisfied of its truth. The petitioner's evidence fails to convince us that his alleged indebtedness to his wife is not an entire fabrication. It also fails to convince us that for the two years prior to the petition there had been no accumulations from his professional income, or that such accumulations have not been passed over to his wife for the future use of himself and his family. We are also wholly unconvinced that his case book, wherein were his charges for professional services, and his bank book, are not in existence and within his reach, had he seen fit to produce them. This fact, in itself, would be a breach of one of the requirements of the statute; but it also goes far to create a suspicion, if not a belief, of the existence of others. We hold, therefore, that the evidence would have supported findings of fact to have justified the decision rendered, which, therefore, should be sustained.

We deem it unnecessary to decide whether the omission of exempt property from the schedules is a breach of the statute, if made innocently and upon the supposition that such property is not required to be included. *In re Mabbett,* 73 Wis. 351; *Van Ingen v. Feldt,* 86 Wis. 345. It is certainly better practice to fully comply with the letter of the statute, and schedule "all the estate." That which is exempt can thereafter be determined by the court with much more certainty of justice to all parties than can be expected from an exercise of the insolvent's own judgment.

*By the Court.*— The order of the circuit court is affirmed.