White vs. Magann and another.

WHITE, Respondent, vs. MAGANN and another, Appellants.

*December 9, 1885 — January 12, 1886.*

*(1, 2) Practice: Reversal of judgment: Findings of fact: Reference to state account: Adoption of findings of referee.   (3) Partnership: Consolidation: " Outstanding accounts."*

1. In an equity case the omission of the trial court to make and file formal findings of fact and conclusions of law is not ground for a reversal of the judgment.

2. Findings of fact showing the basis of an account stated and explanatory thereof are *held* not to have been in excess of the authority of a referee to whom the cause was referred to take testimony and to state the account; and the confirmation of the report containing such findings, and the rendition of judgment accordingly, are *held* to have been an adoption of the findings by the court.

3. Two newspaper establishments being consolidated the articles of a partnership then formed provided that each of the partners should have a one-fourth interest in all the " outstanding accounts " of one of such establishments, which had previously been owned by certain members of the new firm. *Held*, that such interest of each partner covered all outstanding accounts as they appeared upon the books of such establishment at the time of the consolidation, even though some of such accounts had been collected by one of the members of the prior firm, who had failed to credit the same on the books.

APPEAL from the County Court of *Milwaukee* County. On June 12, 1877, the *Milwaukee News,* which had theretofore been conducted by the *Milwaukee News* Company, passed into the ownership and control of a firm consisting of the defendant *E. W. Magann* and John C. Keefe. In January, 1878, M. Almy Aldrich became a member of the firm. On May 2, 1878, the *News* was consolidated with another newspaper known as the *Commercial Times,* owned by Henry A. Chittenden; and *Magann,* Keefe, Aldrich, and Chittenden then formed a copartnership by the articles of which it was provided that in the formation of such partnership the *News* establishment, " including all its type,

presses, machinery, office furniture, outstanding book accounts, good will," etc., should be reckoned at the sum of $15,000, and the *Commercial Times*, with all its type, racks, furniture, and everything else pertaining to the establishment of any value whatever, "including its outstanding and uncollected book accounts, and all other credits due this day or to become due hereafter, also its subscription list and good will," should be reckoned at $5,000. Each partner was to be the owner of one fourth of the consolidated concern, and *Magann* was to be its business manager. It was further provided that out of the outstanding and uncollected accounts of the *News* establishment the new firm should pay all the then existing liabilities of the firms of Magann & Keefe and Magann, Keefe & Aldrich.

On November 14, 1878, Chittenden sold his fourth interest to one Robertson James, who thereupon became a member of the firm.

On February 3, 1879, Aldrich withdrew from the firm and transferred his interest to *Magann;* and on July 16, 1879, Keefe withdrew also transferring his interest to *Magann.*

*Magann* and James continued to own the paper — the former owning three fourths and the latter one fourth — until about December 15, 1879, when *Magann* sold his interest to the plaintiff, *James S. White,* reserving, however, his interest in the outstanding accounts; and at the same time James sold to the plaintiff all his interest in the concern including outstanding accounts.

In March, 1880, *Magann* transferred to the defendant *Weissert* all his interest in the outstanding accounts except certain legal accounts, so called, and certain subscription accounts.

The complaint alleges, among other things, that shortly after the plaintiff's purchase of the newspaper establishment from *Magann* and James, the former carried away

the books of account of the business and has since kept
them in his exclusive possession without the plaintiff's con-
sent; that prior to the plaintiff's purchase *Magann* had
already collected a large number of the accounts which ap-
peared by the books to be outstanding at the time of such
purchase, one fourth of which belong to the plaintiff, and
had concealed from the plaintiff and from James the fact
that he had made such collections, and that he had appro-
priated the entire proceeds of such collections to his own
use; that he had assigned the accounts to the defendant
*Weissert* for the purpose of defrauding the plaintiff out of
his just share thereof, and that *Weissert* was collecting the
accounts and appropriating the proceeds to his own exclu-
sive use. Judgment is prayed that the defendants account
to the plaintiff for all moneys collected by them; that they
be enjoined from making further collections or transferring
the accounts; and that a receiver be appointed.

The cause was referred to L. W. Halsey, Esq., to take tes-
timony necessary to state a true and correct account of the
partnership affairs so far as they might be involved in the
action, and to state a true and correct account thereof
showing the interests of the parties, and to report the testi-
mony and account to the court.

The referee in his report to the court made certain find-
ings of fact, including the facts above stated. He also
found that the defendant *Magann* had assigned his interest
in the accounts to the defendant *Weissert* as collateral secu-
rity for the repayment of money loaned by *Weissert* to him;
that said loan had been fully repaid subsequent to the com-
mencement of this action, and that no re-assignment by
*Weissert* had been proven; that of the amounts collected
by *Weissert*, after allowing a reasonable commission for
collection, one fourth belongs to the plaintiff. Other find-
ings explanatory of the account as stated need not be here
given. The referee also reported a full and itemized state-

ment of the account between the parties, by which it appeared that the defendant *Magann* was indebted to the plaintiff in the sum of $389.44, and the defendant *Weissert* was indebted to the plaintiff in the sum of $37.64.

Motions to set aside and to confirm the report were made by the respective parties. The latter motion was granted and judgment in favor of the plaintiff was entered accordingly. The defendants appeal. Other facts will appear from the opinion.

For the appellants there was a brief signed by *A. G. Weissert*, attorney for *E. W. Magann*, and *Davis & Riess*, attorneys for *A. G. Weissert*, and *Chas. E. Shepard*, of counsel; and the cause was argued orally by *Mr. Shepard.*

For the respondent there was a brief by *John A. Wall*, and oral argument by *D. H. Johnson.*

Cole, C. J. It is objected, on the part of defendants, that the referee exceeded his authority in attempting to hear, try, and decide all questions of law and fact involved in the issue. It is said that by the order of reference the referee was only authorized to take the testimony necessary to state a true and correct account of the partnership affairs, so far as they were involved in the action, and to state a true and correct account thereof, showing the interests of the parties, and to report the testimony and account to the court. It appears to us that this is precisely what the referee did do. True, he made certain findings of fact, but these really amount to no more than a statement of the basis of the account. As said by plaintiff's counsel, they are explanatory of the account which he was required to state, and can do no harm even if impertinent. The record shows that the defendant's counsel moved to set aside the report because there were no proper findings of fact or conclusions of law, thus impeaching the action of the referee because he had not gone far enough in his report. This

motion was met by one on the other side to confirm the report. On the hearing of these motions the court confirmed the report, and adjudged the amount due the plaintiff by each defendant. The court must be deemed to have been satisfied with the findings of the referee, and to have adopted them. In view of what is set forth in the record the position that the cause was never tried by the court below, that the evidence was never considered or passed upon, nor the judicial mind ever called into action upon the case, is quite untenable. Besides, we have examined the record, and fail to find that any objection was taken in the court below that the referee exceeded his authority in reporting to the court his findings of fact; but, on the contrary, the objection was that he had not made sufficient findings of fact and conclusions of law. The objection now made seems to be an after-thought. Nor was the court requested to make formal findings and file them. Under the circumstances we must assume that the court, being satisfied with the findings of the referee, adopted them as its own. As this was an equity case, the omission of the court to make and file findings of fact and conclusions of law would be no ground for reversing the judgment. *Willer v. Bergenthal,* 50 Wis. 474.

This brings us to the inquiry whether the account is stated upon the correct basis. On this branch of the case it is said by the counsel for the defendants that the plaintiff is not entitled to any part of the collections which were made prior to May 2, 1878, and that they should not enter into the accounting. The plaintiff's title or interest to one fourth of the accounts is derived from Chittenden. He stands in Chittenden's shoes, and has the same rights which Chittenden would have had if he had not parted with his interest in all "outstanding book accounts" of the *News* establishment. When the *News* and *Commercial Times* were consolidated, the former, with all its type, presses,

machinery, office furniture, and "outstanding book ac-
counts," etc., were estimated at $15,000; that of the *Times*
establishment at $5,000. Each partner of the firm then
formed owned an equal one-fourth of the partnership prop-
erty and effects after this consolidation. It was provided
in the articles of copartnership that the new firm, when
formed, should pay, out of the outstanding and uncollected
accounts of the *News* establishment, all the then indebted-
ness of the firms of Magann & Keefe, and Magann, Keefe
& Aldrich. But, subject to this charge, each partner was
entitled to one fourth of all the outstanding book accounts
of the *News* establishment. If one of the partners had
collected an account which was not credited on the partner-
ship books, it was a debt due the firm from such partner;
and on a final settlement of the partnership affairs these
balances due the firm by the partners would enter into the
accounting. That is to say, the articles provide, as we con-
strue them, that each partner shall have a one-fourth of all
outstanding accounts as they appeared on the books of the
*News* establishment which had not been balanced by credits
on the 2d of May, 1878, when the consolidation was made.
So that if *Magann* had collected an account prior to that
time, while it was not an outstanding one as between the
firm and the debtor, it was still a debt due the firm from
him. Chittenden had a right to assume that the books of
the *News* establishment were substantially correct, and
showed what accounts were due the firm. He had the right
to act on that assumption, and doubtless did act upon it.
Suppose, for instance, the books of the *News* establishment
showed, at the time, outstanding accounts to the amount of
$5,000, but one of the partners had in fact collected one
half of them, but had made no credits on the firm books
nor charged himself with the sums collected: is it a reason-
able conclusion from all the facts that this debt, due the
firm from such partner, was not a claim which the partner

of the new firm had an interest in, and a right to insist should enter into the final accounting? The answer to this question seems to us plain. Consequently we think the plaintiff is clearly entitled to a one-fourth of all outstanding accounts as they appeared on the books of the *News* establishment, subject to the charge we have indicated, though *Magann* had collected some of them prior to May 2, 1878; and before the referee it was expressly "admitted by both parties that all accounts, up to and including June 12, 1877, as shown in the ledger, are accounts of the *Milwaukee News* Company, and all accounts from June 12, 1877, to December 15, 1879, inclusive, are the accounts in controversy." In the light of this admission all argument upon the point should close, even if there were any doubt as to the correctness of the views which we have expressed.

We have but very little to say upon the details of the account as stated. The defendant *Magann* contests many items for which he is held accountable. The evidence in respect to these disputed items is quite conflicting. By the copartnership agreement it was made the duty of *Magann*, as the business manager, to keep, or cause to be kept, in a correct and reliable manner, a set of books which would show at once the entire business transactions, and every dollar received, what it was for, and when and for what it was paid out. This he did not do; and if he suffers by being charged with items he ought not to pay, it will be in consequence of his neglecting this duty. Confessedly the books do not show the true condition of the accounts or business transactions. If they did, doubt as to many of the disputed items would be removed. The $500 received in the fall of 1878 from Mr. Black was never entered upon the firm books, though the evidence is entirely conclusive that it was not a personal matter, but belonged to the firm. This same remark might be made as to other disputed items in the

account. But after an examination of all the evidence in the printed case we see no reason for disturbing the account as stated by the referee and confirmed by the court below.

*By the Court.*— The judgment of the county court is affirmed.