Disch and others, Respondents, vs. Timm and others, Appellants.

*September 21 — November 22, 1898.*

*Appeal: Findings: Setting aside deed for fraud and undue influence.*

1. Upon appeal in an equity case, the mere failure of the court to make a finding of a fact necessary to support the judgment will not necessitate a reversal of such judgment if the evidence supports it.

2. Though the standing in court of heirs, in an action to set aside a conveyance by their ancestor on the grounds of undue influence and secret fraud, may not be as meritorious as that of creditors would be, yet they are entitled to protection.

3. In an action by heirs to set aside a deed made by their father of all his realty to his second wife through her son-in-law as trustee, evidence that the defendant wife was a woman of strong mind, who had been twice divorced, and had carried on a saloon prior to her last marriage; that on such marriage she took her own three children with her to her husband's house, and that two of the plaintiffs, his children, about a year afterward, found it agreeable, if not absolutely necessary, to leave his house; that to avoid the collection of damages in a pending suit he deeded his property to her, but received it back after that suit had been settled; that, when he was taken sick and it was discovered that he had cancer of the stomach, the plaintiffs though living near by were not informed thereof, nor were they told of any contemplated conveyance of his property, but the execution of the deed sought to be set aside was kept a profound secret from them until after their father's death, and they were not permitted to be with or converse with him alone; that the deed was drawn by the wife's son-in-law, and was made when the father had become weakened in mind by the medicine used; that it was not read to him when executed, nor then delivered by him to the grantee, and was not recorded until after his death, *held* to raise a presumption that such deed was obtained by fraud or undue influence, and that in the absence of evidence on the part of defendants to overcome such presumption the deed should be set aside.

APPEAL from a judgment of the superior court of Milwaukee county: GEO. E. SUTHERLAND, Judge. *Affirmed.*

For the appellants there was a brief by *Chapin & Stebbins*, and oral argument by *A. K. Stebbins*. They argued, *inter alia*, that there was no proof of actual fraud, which was the ground for relief alleged in the bill. Fraud must be proved, and is never to be presumed. *Cooper v. Reilly*, 90 Wis. 427. In this case the existence of positive fraud is strongly negatived by the testimony of defendants, which is undisputed. *Conger v. Dingman*, 98 Wis. 417; *Burnham v. Norton*, 100 id. 8. A deed from husband to his wife is in its nature meritorious, and does not *per se* raise any presumption of fraud or undue influence. *Jones v. Obenchain*, 10 Grat. 259; *In re Langford*, 10 Cal. 608, 622; *Waterman v. Higgins*, 28 Fla. 660, 669, 671; *Brown v. Brown*, 44 S. C. 378; *Jackson v. Jackson*, 39 N. Y. 153, 156; *Nelson's Will*, 39 Minn. 204; *Latham v. Udell*, 38 Mich. 238; *Gunther v. Gunther*, 69 Md. 560; *Hodges v. Cook*, 93 Mich. 577. Where a deed is in possession of the grantee and has been duly recorded, every presumption is in favor of its proper execution and delivery. 1 Jones, Ev. § 44; *Ward v. Lewis*, 4 Pick. 518, 520; *Greillier v. Neale*, 1 Peake, 146; *McFall v. McFall*, 136 Ind. 622, 626, 627; *Roberts v. Swearingen*, 8 Neb. 363, 371; *Canning v. Pinkham*, 1 N. H. 353, 357; *Walton v. Burton*, 107 Ill. 54; *Butrick v. Tilton*, 141 Mass. 93, 95; *Wheeler v. Single*, 62 Wis. 380, 386.

For the respondents there was a brief by *Toohey, Gilmore & Donovan*, and oral argument by *John Toohey*.

CASSODAY, C. J. This action was commenced January 21, 1897, by the plaintiffs, as heirs at law of August Timm, who died June 5, 1896, to set aside a certain deed from August Timm and his wife to the defendant *Snyder A. Visey*, executed March 9, 1896, and also to set aside a certain other deed executed by *Snyder A. Visey* and wife to *Dora Timm*, March 10, 1896, on the grounds that, at the time of executing such deeds, August Timm had not mental capacity to do business, and that he was induced to execute such deed

to *Visey* by fraud and undue influence. The complaint alleges the requisite facts in such cases, and prays judgment that said deeds may be canceled, surrendered, set aside, and declared void, and for the costs and disbursements of this action. The defendants *Snyder A.* and *Anna Visey* separately answered, by way of admissions, denials, and counter allegations, to the effect that the defendant *Anna* was the daughter of defendant *Dora* by a former husband, and that the defendant *Snyder A. Visey*, in so taking and giving the deeds, acted solely as a trustee to pass title from August Timm to the defendant *Dora Timm*, and they disclaim any interest in the premises. The defendant *Dora Timm* answered by way of admissions, denials, and counter allegations, and claimed title to the premises under the deeds in question.

The cause having been tried, the court found, as matters of fact, in effect:

(1) That August Timm died June 5, 1896, leaving, him surviving, the defendant *Dora Timm*, who, at the time of his death, was his third wife, and that the deceased was her third husband; and also leaving, him surviving, the plaintiffs, *Mrs. Augusta Disch*, *Mrs. Ida Sturm*, and *Edward Timm*, who were his children by his first wife, and his sole heirs at law.

(2) That *Dora* and August were married March 4, 1888; that, at the time of such marriage, August was the owner and in possession of the lots described, and continued such owner up to the time of his death.

(3) That March 9, 1896, August signed the deed of the premises described to *Snyder A. Visey*, dated on that day, and recorded June 6, 1896.

(4) That March 10, 1896, *Snyder A. Visey* and *Anna*, his wife, executed to *Dora* a deed of said premises, dated on that day, and recorded June 6, 1896.

(5) That, at the time of such signing of the deed by

August to *Visey*, August was physically weak from long-continued sickness, which somewhat affected his mental condition and somewhat weakened his will power; and that he had been in such condition for a considerable time prior to the signing of that deed, and continued in such condition up to the time of his death.

(6) That, at the time of making the deeds, the defendants were, and for a long time prior thereto had been, in a position to exercise undue influence over the said August.

(7) That the relations between August and *Dora* were those of trust and confidence, and such as to raise, in the law, suspicion or presumption of fraud and undue influence at the time the deeds were made.

(8) That, at the time the deeds were made, two of the plaintiffs were at hand, and on good terms with the deceased, and could have been easily called in or notified of the proposed conveyances, but were not, and none of the plaintiffs knew of such deeds until after the death of August.

(9) That, at the time August signed the deed to *Visey*, it was not read over or explained to him, and he was not asked if he knew its contents, and it does not appear that he had such knowledge, and the deed was never properly acknowledged.

(10) That there was no evidence that the deed of August to *Visey* was the intelligent and deliberate act of August.

(11) That the defendants had not removed the suspicion or presumption of fraud and undue influence which obtained under the facts and circumstances disclosed in this case.

(12) That there was never any legal delivery of the deed from August to *Visey*.

(13) That the deed to *Visey* purports to convey substantially all the property of August, and contains no reservation or agreement providing for his support during the rest of his life; and that the deceased intended to retain, and

did retain, control of both deeds until his death, and intended that they should not take effect until after his death.

(14) That the plaintiff *Edward Timm* is mentally deficient and unable to provide for or take care of himself, and had especial claims to be remembered and provided for by his father.

(15) That the total amount of money that *Dora* let August have during his life does not exceed $3,800; that the property conveyed by the deeds was worth, at least, $18,000.

(16) That notice of the pendency of this action was duly filed January 27, 1897.

And, as conclusions of law, the court found, in effect, that the plaintiffs were entitled to a judgment against the defendants vacating and setting aside said deeds, and each and both of them, and ordered judgment to be entered accordingly, together with the costs and disbursements of this action. From the judgment so entered thereon the defendants bring this appeal.

It is contended that the findings are contrary to the evidence. There is evidence tending to prove — and, in fact, much of it is undisputed — that, at the time August died, he was fifty-seven years of age; that he had three children by his first wife, who died in 1881; that the plaintiff *Augusta* was born in 1862, the plaintiff *Edward* in 1867, and the plaintiff *Ida* in 1875; that August had no children by his second wife, who only lived about five weeks; that he had no children by his third wife, *Dora;* that the defendant *Dora* was born in March, 1847; that she first married Koepler, and by him had six children, three of whom were living at the time of the trial; that *Dora* was divorced from Koepler October 6, 1877; that *Dora* thereupon married Andreas Roesel; that, while she was living with him, she ran a saloon for some years; that she was divorced from him about February 1, 1888; that March 4, 1888, *Dora* married August Timm, and thereupon took her three surviving children to his home;

that one of her children, Bertha, was then thirteen years
of age; that another, *Anna* (defendant herein), was fifteen
years of age; that another, Herman, was still older; that the
plaintiff *Augusta* was then twenty-six years of age, and had
been married about five years before, and was living with
her husband; that the plaintiff *Edward* was about twenty-
one years of age, but was always sickly and weak-minded,
and so was still living with his father, but left a year or so
afterwards; that the plaintiff *Ida* was then about thirteen
years of age, and she remained at her father's house about
one year after such marriage, when she was compelled to
leave home and work out; that *Ida* was always treated
kindly by her father until after he married *Dora;* that from
that time on, until August died, his family consisted of *Dora*
and her children, and at times the plaintiff *Edward;* that
during that time *Dora* carried the purse, and August had to
do whatever she wanted him to; that, when he spent money
or treated any one, she would pay the bill; that the plaintiff
*Augusta* had no property, and her husband supported his
family by his labor; that she did not visit home after her
father's last marriage, until he was taken sick, on the ground,
as she claimed, that *Dora's* reputation before the marriage
had not been such as she approved, and that *Dora* did not
want her to make such visits; that March 14, 1890, and after
Mr. Timm had been sued for slander and $5,000 damages
claimed, he deeded the property in question, through another,
to his wife, *Dora;* that, after the suit was tried and judg-
ment entered, she, through another, deeded the same back
to him; that, about two years prior to August's death, the
plaintiff *Ida* got married, and, about nine months before he
died, she and her husband moved into rooms upstairs over
the rooms where her father and *Mrs. Timm* resided, and con-
tinued to live there until her father died; that during that
time she saw her father three or four times a week, and al-
ways on good terms with him; that, whenever she went to

see her father, *Mrs. Timm* would always treat her coolly, as though she was not welcome, and would not allow her to have any private talk with her father after December 2, 1895, claiming that he was too sick to be spoken to; that once, in April, 1896, *Mrs. Timm* was going to the lodge in the afternoon, and she (*Ida*) volunteered to stay with her father during her absence, but *Mrs. Timm* refused to allow her to remain, and said her own daughter, Mrs. Wolff, would stay; that during that time the defendants *Anna* and *Snyder A.*, *Dora's* daughter and son-in-law, lived in a cottage just in the rear of Mr. and *Mrs. Timm.*

Dr. Berger testified to the effect that in January or February, 1896, he was consulted by August; that he then found him "suffering from cancer of the stomach;" that the cancer had then existed for some time, but that he did not know of how long duration; that August was under his treatment for five months before he died; that, when he first examined him, he was sure he had carcinoma; that he did not then prescribe, but requested him to bring his wife to his office, giving him the impression that he wanted to tell her what diet he needed, but really because he thought she ought to know what ailed him; that he could not do much for him, only to relieve the pain; that he gave him a solution to aid digestion, and morphine and codeine to relieve pain, and bromides and chloral hydrate to make him sleep; that he did not tell Mr. Timm what ailed him until later on, but that he thought they told him at the house; that the effect of the morphine and the drugs that he gave him to relieve pain was simply to benumb the nervous system; that it also had some effect on his mental condition,— made him rather dull and drowsy for the time being; he did not need it all the time; that he continued such treatment up to the time of his death, except that he gradually increased the dose; that at one time another doctor was called in, but he simply verified his statement; that in the early part of March, 1896,

he was not getting very heavy doses of morphine, and was
perfectly sane, with sufficient mental capacity to transact
business; but was somewhat weak; the disease would impair
a man all round,— weaken his mental capacity, and weaken
his system in general.

The plaintiff *Augusta* testified to the effect that March 8,
1896, she attended a birthday party in the forenoon, and
there learned for the first time that her father was sick;
that, in company with another lady, she visited him on the
afternoon of that day, and remained with him about half an
hour; that *Mrs. Timm* and her son were present; that *Mrs.
Timm* appeared to be. shocked to see her; that she asked
her father if he was sick, and he said, "Yes, my daughter;"
that she then asked him how long, and what was the mat-
ter, and he said, "I have pain here," — putting his hand on
his stomach,— and said that he took nothing but morphine;
that she only spoke to her father, and asked him if he did ·
not want the doctor she employed; that *Mrs. Timm* was
cool, and said, "Oh no; we have Dr. Berger; he does all he
can;" that after that, and up to her father's death, she vis-
ited her father several times every week, but never had an
opportunity to talk with him in private; that *Mrs. Timm*
or one of her daughters was always there, except twice, and
then only for a few minutes, when *Mrs. Timm* was outside
and did not notice her going in; that she had no property;
that their furniture was worth about $200, and that they
paid $5 a month rent.

*Mrs. Timm* testified to the effect that August had com-
plained for about two years; that Dr. Berger had attended
him from December 2, 1895, until he died, June 5, 1896; that
in February, 1896, Mr. Timm ceased to go to the doctor's
office, and thereafter the doctor visited him at their house.

The defendant *Snyder A. Visey*, who married *Mrs. Timm's*
daughter, November 22, 1895, testified to the effect that the
first he heard of Mr. Timm's desire to transfer the property

to him, as trustee, was March 8, 1896; that, a few days before, his wife and *Dora's* son-in-law Wolff had told him that Mr. Timm wanted to see him; that Mr. Timm told him he wanted to keep his wife from having trouble, and to get a notary public, and have the deeds made out; that he drew the deeds himself, and the next day had the notary come up, and Mr. and *Mrs. Timm* executed the one of March 9, 1896, reciting a consideration of one dollar; that the next day, March 10, 1896, the witness and his wife executed the deed of that date to *Mrs. Timm*, reciting a consideration of one dollar; that he took the two deeds, after they were executed, and delivered them to Mr. Timm, and, after he died, had them recorded.

*Mrs. Timm* testified to the effect that she got the deed from her husband when they sold the property, March 9, 1896; that the man who made the papers wrote the deed; that she did not know his name; that it was on the deed; that the deeds were made in her house, if she was right, at the same time; that the man wrote everything she saw; that the man who drew the papers took them with him, if she remembered rightly; that she could not remember when she got them back, but within a few days; that Mr. Timm looked them over, and directed her to save them,— to make no mistake,— that one belonged to her, and the other to him, and not to make a mistake in case he should die, that the one whereby they sold the land should be recorded first, and the one whereby they bought it back should be recorded second; that she left the deeds lying on the bureau; that he said to her that, if he did not die, the deeds should remain that way; that she did not know what he was going to do with the deeds if he got well; that they were her husband's affairs; that whatever he had done with them, she would have been satisfied; that they were put in her bureau drawer, to which they both had access.

The notary testified to the effect that he did not draw the

deed to *Visey*, and did not know who did; that it was not read to Mr. Timm in his presence; that Mr. Timm signed the deed in his presence, and that he took the acknowledgment of it, but did not ask Mr. Timm if it was his free act and deed; that he took it for granted that it was; that he did not take any deed away with him, and did not know what became of them.

1. The evidence fully sustains the findings as to the value of the lots. Notwithstanding the findings to the contrary, we assume, for the purposes of this appeal, that the two deeds were properly executed and acknowledged. Whether, under the admitted facts in this case, the deeds, or either of them, were ever delivered to *Mrs. Timm*, with the intent to pass the title to her *in præsenti*, is, to say the least, extremely doubtful. *Visey*, who was a mere go-between, testified that, after the deeds were executed, he passed them both over to Mr. Timm; and there is no evidence that he ever parted with them, except the testimony of *Mrs. Timm*, which, assuming it to be competent, is only to the effect that Mr. Timm looked them over, and directed her to save them, and what to do with them in case he died, and if he did not die, that they should remain as they were. It would seem, as found by the trial court, that Mr. Timm intended to retain, and did retain, control of both deeds until his death, and that he had no intention that they should take effect until after his death. This court has recently held that "a deed does not become operative until its delivery by the grantor with intent to pass the title," and that such intent may be shown by parol evidence. *Curry v. Colburn*, 99 Wis. 319. But it is unnecessary to place this decision upon such narrow and technical ground.

2. It is manifest, as found by the trial court, that, at the time of making the deeds, the defendants, and each of them, and particularly *Mrs. Timm*, were, and for a long time prior thereto had been, in a position to exercise due influence over

the deceased.   In other words, they had the opportunity to
exercise such influence; and the motive of securing over
$14,000 by the exercise of such influence was all the time
present.   It is undisputed that neither of the plaintiffs had
any knowledge or information in respect to such deeds, or
either of them, until after the death of their father.   True,
the plaintiff *Edward* was absent, at work, when the deeds
were made; but the plaintiff *Augusta* visited her father for
half an hour on the afternoon of the very day when, accord-
ing to the testimony for the defense, the matter of making
the deeds was first broached, and she was there frequently
thereafter, and the plaintiff *Ida* was, during all the time, in
rooms just above.   It is true that the court has not found,
as a matter of fact, that the deeds were procured by fraud
or undue influence, but simply that the relations between
August and *Dora* " were those of trust and confidence, and
such as to raise, in the law, suspicion or presumption of
fraud and undue influence at the time the deeds were made."
This is a conclusion of law, rather than a finding of fact.
But, this being an equity case, the mere absence of such find-
ing of fact does not of itself necessitate a reversal, if the
evidence supports the judgment.   *Wilkinson v. Wilkinson,*
59 Wis. 557; *White v. Magann,* 65 Wis. 86; *Jones v. Jones,*
71 Wis. 520; *Dietz v. Neenah,* 91 Wis. 425, 426; *Williamson
v. Neeves,* 94 Wis. 657.

3. The question recurs whether the evidence is such as to
raise the suspicion or presumption that the deeds were pro-
cured by undue influence.   The story of *Mrs. Timm's* life, as
indicated above, makes it very evident that she was a woman
of strong mind and commanding influence.   Her experience
with her two former husbands, from each of whom she had
been divorced, necessarily fitted her for obtaining a mastery
over Mr. Timm.   Her years of experience as a proprietor of
a saloon must have made her capable of reading the motives
of men, and playing upon their hopes and fears.   Upon
marrying Mr. Timm, she at once took her three minor chil-

dren with her to his house, to make their home with him. A year afterwards, Mr. Timm's two unmarried children found it agreeable, if not absolutely necessary, to leave the household, notwithstanding one of then — the plaintiff *Ida* — was only of the tender age of fourteen. Two years after the marriage, when big damages in a pending suit for slander confronted Mr. Timm, he found it convenient to convey all his property to his wife, and got it back after the suit was settled and *Mrs. Timm* was about to go to Germany. December 2, 1895, Mr. Timm called on the doctor, who testified that he found that Mr. Timm had cancer of the stomach, which had existed for some time. The doctor did not then tell Mr. Timm of his condition, but did tell his wife. In February, 1896, Mr. Timm was unable longer to visit the doctor, and so the doctor thereafter visited him at his house. March 8, 1896, the plaintiff *Augusta* accidentally heard for the first time of her father's sickness, and at once visited him. On the same day, *Mrs. Timm's* son-in-law drew the deeds, and one was executed the next day, and the other the day after. For more than three months, and with full knowledge on the part of *Mrs. Timm*, Mr. Timm had been gradually sinking with a disease sure to terminate within a few months in death; and yet her feelings toward the plaintiffs were such that she never informed one of them of his sickness, much less of any contemplated conveyance of the property; and then, after the deeds were executed, the fact of their having been executed was kept as a profound secret for three months, and until after Mr. Timm's death; and yet during all that time the plaintiffs, or at least two of them, were where she could have readily informed them had she so desired. It does not appear affirmatively that the notary, or any one except the defendant *Visey*, knew of the contents of the deeds. That *Snyder A. Visey* was acting by and under the direction of *Mrs. Timm*, no one can doubt. The motive was addressed to both.

Of course, the rule is universal that, where a person to be

benefited by a will or a voluntary deed has a controlling
agency or influence in procuring its execution, it is regarded
as a very suspicious circumstance, requiring the fullest ex-
planation. Especially is this so where there exists a confi-
dential relation, as between physician and patient, attorney
and client, minister and parishioner, or even a neighbor and
near friend. *Crispell v. Dubois,* 4 Barb. 393; *Newhouse v.
Godwin,* 17 Barb. 236, 258, 259; *In re Welsh,* 1 Redf. 238;
*Harvey v. Sullens,* 46 Mo. 147; *Samson v. Samson,* 67 Iowa,
253; *Warrall's Appeal,* 110 Pa. St. 349; *Yardley v. Cuthbert-
son,* 108 Pa. St. 395. In *In re Wheeler's Will,* 5 Misc. 279, 25
N. Y. Supp. 314, it was held that, "where interest, oppor-
tunity, and a disposition to influence testator improperly are
shown, a presumption of undue influence arises, and the bur-
den is then on the party charged therewith to show that the
will was testator's voluntary act." In a recent English case
it was held on appeal, with the present learned Master of the
Rolls participating in the decision, that "the true rule to be
deduced from" the authorities is "that wherever a will is
prepared and executed under circumstances which raise the
suspicion of the court, it ought not to be pronounced for,
unless the party propounding it adduces evidence which re-
moves such suspicion and satisfies the court that the testa-
tor knew and approved of the contents of the instrument."
*Tyrrell v. Painton* [1894], Prob. Div. 151. Of course, solici-
tations or arguments on the part of a wife which appeal only
to motives of natural affection and gratitude do not consti-
tute undue influence. *Stulz v. Schæffle,* 18 Eng. Law & Eq.
576; *In re Jackman's Will,* 26 Wis. 104. In *Davis v. Dean,*
66 Wis. 100, an old lady, in feeble health, and suffering pain
from disease, without consideration, conveyed, to one of her
heirs at law, land of the value of four or five thousand dol-
lars, secretly and without the knowledge of the other heirs
at law, who were near and might readily have been called
in. The trial court sustained the conveyance, but the judg-

ment was reversed by this court, on the ground that the evidence raised a presumption that the deed was obtained by fraud or undue influence, and that the burden of removing such presumption was upon the defendants claiming under the deed. 66 Wis. 110, 111. That case has frequently been followed by this court. *Will of Slinger*, 72 Wis. 35; *Parry v. Parry*, 80 Wis. 130; *Creamer v. Ingalls*, 89 Wis. 112, 119; *Ashmead v. Reynolds*, 134 Ind. 139. In a case quite similar in its facts it was held by the highest court.in New York that "a court of equity will set aside a deed obtained by persons standing in such relation to the grantor as to give them a controlling or very strong influence over the conduct of such grantor, upon slight evidence of the improper exercise of such influence." *Sears v. Shafer*, 6 N. Y. 268. See, also, *Woodbury v. Woodbury*, 141 Mass. 329. This court has held that "in an action between a wife and her husband's creditors, where she claims property in dispute by purchase from her husband, the burden is upon her to prove, by clear and satisfactory evidence, that such purchase was made in good faith, for a valuable consideration, paid out of her separate estate, or by a third person for her; and the same rule applies to one who took from the wife with notice." *Horton v. Dewey*, 53 Wis. 410. That case was followed in *Fisher v. Shelver*, 53 Wis. 498; *Breslauer v. Geilfuss*, 65 Wis. 387. Here the plaintiffs do not claim as creditors, but merely as heirs at law. While their standing in court may not be as meritorious as creditors' would have been, yet they are entitled to protection against the undue influence and secret frauds proved in this case.

*By the Court.*— The judgment of the superior court of Milwaukee county is affirmed.