WILL OF LOTWIN: LOTWIN, Appellant, vs. HARPER, Public Administrator, Respondent.

*January 12—February 10, 1925.*

*Wills: Undue influence: Evidence: Sufficiency.*

In a contest over the admission of a will to probate, the evidence is *held* to disclose an opportunity for the exercise of undue influence, but not to sustain the inference of the trial court that such influence was in fact exercised.

APPEAL from a judgment of the county court of Dane county: A. G. ZIMMERMAN, Judge.  *Reversed.*

Proceedings for the probate of a will.  Louis Lotwin, a resident of Madison, Wisconsin, was on Thursday, January 31, 1924, shot by some unknown person.  He was taken to the hospital, where he made his will the next Thursday morning between 9 and 10 o'clock.  He died just after midnight of Saturday, February 10th.  On Saturday morning following the shooting, *Mr. Charles Lotwin,* the proponent of the will and the uncle of the testator, in response to a request sent from Madison, came to see his nephew and he remained in the city until after the testator's death.  While he was here he spent considerable time in the hospital visit-

ing with his nephew, at times being out in the corridor and from time to time opening the door into the testator's room to see how he was getting along, and during all that time he had more or less free access to the testator. He sent for Mr. Schein, the lawyer who drew the will, at the request of the testator. The trial court found the will was properly executed as to form; that the testator was at the time of the execution of the instrument of sound mind and testamentary capacity, but owing to the injuries he had received he was in a very weakened physical and mental condition and was susceptible to undue influence. The court further found that the proponent had ample opportunity to exercise undue influence upon the testator. It further found that the proponent had a disposition to exercise undue influence upon him and to obtain the execution of his will in his favor, and that the instrument propounded as the last will and testament of Louis Lotwin was the result of the exercise of undue influence exercised by *Charles Lotwin* upon the testator, and as a conclusion of law he denied the probate of the will. From a judgment entered accordingly the proponent appealed.

For the appellant there was a brief by *Curkeet, Lewis & Sanborn* and *S. B. Schein,* all of Madison, and oral argument by *Roy P. Wilcox* of Eau Claire and *William R. Curkeet.*

For the respondent there was a brief by *La Follette & Rogers* of Madison, and oral argument by *Philip La Follette.*

VINJE, C. J. The trial court disposed of the case upon correct legal principles. He recognized that in order to justify the setting aside of the will upon the ground of undue influence there must be an opportunity to exercise such influence; a disposition on the part of the person to exercise it; a susceptibility on the part of the testator to undue influence; and a result from which it may legitimately be inferred that

undue influence was exercised so that the will was not that of the testator but of the person exercising the undue influence. The trial court wrote a very clear, concise, able opinion which tends to sustain the result reached by him. We concede that under the testimony there was opportunity for the exercise of undue influence. And upon that question we shall say nothing further. That there was a disposition to exercise undue influence is very doubtful. That the testator was a subject susceptible to undue influence is negatived by all the testimony in the case. It can be inferred only from mental and physical weakness, but under the testimony in this case we think that such inference, in view of the positive testimony as to the characteristics of the deceased and as to what took place at the time of the execution of the will, cannot legitimately be drawn from the evidence. The result of the will, under the circumstances, is one which may, in a certain aspect of the case, be said to indicate undue influence; on the other hand, there is much to sustain the conclusion that no undue influence was exercised upon the testator, but that for reasons hereinafter to be mentioned he desired to leave his money to his uncle and did not want it sent to Russia. An extract from the trial court's opinion will show more concisely than can be done in any other way the argument for the result reached by the court and a summary of the facts upon which the conclusion of the trial court was based. The court says:

"There isn't any doubt but what the decedent must have been influenced by his continued presence there, at least during all of that time. There is the fact that this man, while he was very likely able to make a will, mentally, if left to his own reflections—yet, after lying there a week, after being shot, and under the care that he had to have there, with his especial relapse and weakness and physical difficulties that same morning early, he must have been in such a physical and depressed mental condition that we will have to say that, under all the circumstances of this case, it probably fulfilled a question of having a subject in a condition that was susceptible to undue influence.

"Now, then, we have two points of the four, as to susceptibility and opportunity, without question, and a third point as to result. That, of course, we will have to take as having been complied with, so that at least three of the four points upon which undue influence is based, as decided by the supreme court, have been fulfilled, and it leaves simply the fourth as to the matter of disposition.

"Now from this whole testimony, as has been indicated, there isn't anything direct, and it is practically impossible to prove undue influence ordinarily by direct evidence; yet we have the whole situation here—the testimony of this man's anxiety with reference to the decedent's property, what he had, and all that, and sticking to him close during all this time, and in connection with that the fact of the positive testimony of the scrivener at the time of the making of the will. In connection with the discussion as to whether the decedent's father and sisters would be taken care of, we have the testimony of the scrivener and that this decedent trusted the beneficiary to look after them, and intended that he would and that he should; and the scrivener says that he positively stated he would. That testimony is very clear, and the man himself says that he didn't say anything of the kind. Now, that has a bearing on the matter, as showing the condition of mind of the decedent, and the influence that all the circumstances indicate was brought to bear upon the question.

"On the whole case—taking the whole situation, and all the little details of the testimony surrounding it, and the attitude that this man took in this business,—the court will have to say that the matter of undue influence, under the law, has been shown, and that this will be disallowed."

The testator had lived in this country twenty-three years, was a common laborer, and in that time had saved about $12,000, and had, as the testimony shows, sent some money back to Russia to his father and two sisters who were living there. His nearest relative in this country was his uncle *Charles Lotwin,* proponent, who lived at Menomonie, Wisconsin. The testimony is slightly conflicting as to how the testator regarded his uncle. There is testimony to the effect that he said his uncle was stingy and he did not like him. It appears that the uncle lived on a small farm near

Menomonie; had a number of children, and was in rather straitened circumstances; and that the testator, who had visited him from time to time, and at one time lived with him almost a year, was very much attached to his nephews and nieces and had promised to aid in their education, suggesting that they come to Madison where he, the testator, lived, so that he might help them through school. Mr. S. B. Schein, a reputable attorney of the city of Madison, drew the will, and this is a portion of his testimony as to what took place at the time the will was drawn:

"I asked him how he felt and then he said, 'Mr. Schein, I want you to draw a will for me,' and I said, 'All right.' The uncle and the testator were there at the time. I asked Louis what property he had and he gave me a statement of all his property, substantially, and I made a notation of his property and then I asked him what he wanted to do with it, who he wanted to leave it to. He said, 'I want to leave it to my uncle, *Charles Lotwin.*' I said, 'Louis, you have got a father and I understand you have got a twin sister and another sister.' He said, 'My uncle will take care of it, I am sure of it.' I said, 'Louis, I can put it in that will that you leave it to your uncle, *Charles Lotwin,* for the purpose that he should have this property for the benefit of your father and sisters,' or words to that effect. He said, 'No, I don't want to put it in the will that way, because my uncle will do what is right,' and *'Mr. Charles Lotwin* said he would do what is right for my people.' *Charles Lotwin* said, 'Sure, I will give it to them, I will do what is right, I will give it to them,' or words to that effect, referring to the father and sisters in Russia. That was before the will was made. I left the hospital about 9 o'clock that morning and the will was written out and we got back to the hospital close to 11 o'clock. We went into the room and I read the will to Louis Lotwin and he asked about 'revoking' and perhaps a few other things. I told Louis Lotwin, 'Louis, you will note I did not put anything in there for your father or your sisters, because you say you know your uncle will do the right thing by them.' He said, 'Sure.' I read it and he signed it. Nothing else was said by the uncle. The uncle

said nothing to me about the terms of the will and he simply telephoned me to come over. This is the first time I had seen him. He just telephoned that Louis wanted to see me.. As to Louis Lotwin being an independent or dependent man, he was a very stubborn man. I have drawn quite a number of wills. I never heard him express any estimates one way or the other about his relatives in the old country, except when his mother died about three years ago he took it very hard but did not return to the old country. At the time Louis wanted me to make the will he said that he wanted it made out to his uncle, or he wanted to give all his property to his uncle. After that I explained to him that I could make provision in the will for his father and sisters, and then he told me again that he wanted it made out to his uncle with the idea that he knew that his uncle would treat his father and sisters right. There was nothing more definite said at the time as to what he meant by treating his father and sisters right other than what I have said. I went stronger than to suggest expressly to Louis Lotwin the making of a provision in the will for his father. I told him, 'Louis, it is your property, it is your money, and you can do as you see fit, and I am here to write it, but I don't like this at all.' I told him that in the presence of his uncle. Then after that Louis said, 'My uncle will treat my father right.' *Mr. Charles Lotwin* said, 'Sure, I will.' I said, 'I can put that very thing in there so you will be sure it will be done.' Louis said, 'No, my uncle is an honest man, he will do what he says.' "

We have set out this testimony rather fully because it is uncontradicted except as to one item, and that is as to whether the proponent of the will said he would do what was right or that he would treat the father and sisters of the testator right and would leave the property to them. This *Mr. Charles Lotwin,* the proponent, denies. In other respects the testimony of Mr. Schein is uncontradicted, and it refutes strongly and explicitly the inference that the will was the result of undue influence. It shows that the will and the details thereof were explained to the testator and that he insisted upon having it made as it was made. It

further shows without contradiction that the testator was a strong-willed, stubborn man, knowing what he wanted and accustomed to having his way. There is nothing in the whole conference at the time the will was drawn to indicate that the mental condition of the testator was such that he failed to exercise his own mind upon the subject matter of the will. In view of such uncontradicted strong and positive testimony we do not feel that the inference made by the trial court that undue influence was exercised and that the will was the result thereof can be sustained by the evidence. The fact that *Mr. Lotwin,* the proponent, denied that he stated that he would take care of the testator's father and sisters or would see to it that the property was turned over to them simply affects *Mr. Lotwin's* credibility, but none of the facts upon which the execution of the will is based depend upon the testimony of *Charles Lotwin.* His testimony may be false or incorrect in some or many respects without in the least affecting the fact that the will was not the result of undue influence. That conclusion is reached upon testimony other than that of the proponent. The result of the will is not one that unmistakably indicates undue influence. The testator had been away from Russia for about twenty-three years, during which time he had never revisited it. He had an uncle here, nephews and nieces. He had lived in more or less close contact with his uncle, and the evidence shows that whatever opinion the testator may have had of his uncle as to stinginess or other qualities, the relationship between them seemed to be friendly and cordial, such as usually exists between relatives sustaining such relationship. There is testimony to the effect that the testator had attempted to send money to Russia and that it had miscarried. He is said to have declared that he would never attempt to send any more. There is also testimony to the effect that it was not safe at this time to intrust valuable money such as United States money to poor people in Rus-

sia because of the danger incurred by the possession of such money. Now whether these things operated in the mind of the testator to make his uncle his legatee is not very material. The vital question in every will contest where undue influence is claimed to have been exercised is, Was the will such a one as the testator wanted to make? His reasons for so making it may be good or bad, or there may be no reasons whatsoever for the making of it. If it is clearly apparent that it was in fact his will, it is immaterial what reasons he had for the making of the will in the manner in which it is made. He is entitled to have his will carried out according to its directions. We therefore reach the conclusion that the trial court was not justified in finding that the will in question was the result of undue influence exercised by the proponent.

*By the Court.*—Judgment reversed, and cause remanded with directions to allow the will to probate.