BAKER, Appellant, vs. BAKER and others, Respondents.

*January 14 — February 21, 1899.*

*Wills: Undue influence: Fraud.*

The evidence in this case — showing, among other things, that a testator was seventy-three years of age when he died; that he left a widow, his second wife, by whom he had no children; also a married son and daughter, children of his first wife, and several grandchildren, children of a deceased son; that until about six weeks before his death he appeared to have sufficient mental capacity to do business, but about three weeks later had become very feeble

Baker vs. Baker and others.

and had difficulty in recognizing old acquaintances; that about ten days before his death he expressed a desire to make his will and give his wife his home farm for life or widowhood, together with the equipment to carry it on; that he grew weaker, and on the next day failed for some time to recognize a friend and when aroused said he did not know where he was; that on the following day he signed a paper in the nature of a 'will, nearly all written in pencil by his wife, giving to her his household goods absolutely, his farm and farming utensils as long as she should remain his widow, and full control of all notes and mortgages; that about three hours afterwards he signed the paper offered as his will, drawn by an unskilled neighbor, by which he gave to his wife all of his property, worth more than $30,000, except some trifling legacies; that the testator's children and grandchildren were then out of the state and did not know of his illness; that they afterwards learned of it, not from his wife, and when some of them came they were never left alone with him, but his wife or her sister was always present, and they did not learn of the alleged will until after his death,— is *held* to show that the alleged will was procured by undue influence or fraud.

APPEAL from a judgment of the circuit court for Dodge county: JAMES J. DICK, Circuit Judge. *Affirmed.*

The opinion states the case.

*M. L. Lueck* and *Edwin F. Van Vechten*, attorneys, and *W. H. Timlin*, of counsel, for the appellant.

For the respondents there was a brief by *H. K. Butterfield, Sawyer & Sawyer*, and *J. E. Malone*, and oral argument by *Mr. Butterfield* and *Mr. E. W. Sawyer*.

CASSODAY, C. J.    It appears from the record that, February 22, 1897, Dennison Baker died, leaving an instrument which the county court admitted to probate as his last will and testament, which, omitting the formal part, is as follows:

"First, I give and bequeath to my grandchildren Grace and Josie Rector the sum of $250 each within one year from the time of my demise.

"Second, I give and bequeath to my son *Adelbert Baker* the sum of $50.

Baker vs. Baker and others.

"Third, I give and bequeath to my daughter *Ruby* the sum of $100.

"Fourth, I give and bequeath to my grandchildren *Adelbert, Frederick, Thomas, Alice,* and *George,* children of my son George, the sum of ten dollars each.

"And lastly, I give and bequeath to my wife *Nancy* all the rest of my real estate and personal property, of what nature or kind soever, and appoint her sole executor of my estate, without bonds.

"In witness whereof I have hereunto set my hand and seal the 15th day of February, 1897.

"D. BAKER. [Seal.]"

There was also an attesting clause, signed by J. W. Martin, C. E. Annis, and Rudolph Hermann.

On appeal from the county court, a trial was had by the circuit court and a jury; upon issues agreed upon and submitted, and at the close of the trial the jury returned a verdict to the effect that such paper writing was executed in conformity with the provisions of the statutes relating to wills; that the deceased did not have testamentary capacity at the time of the execution of the alleged last will and testament; that it was not his own voluntary act and deed, but was the result and product of undue influence. Thereupon the trial court refused to set aside such special verdict or any part thereof, but confirmed the same, and ordered and adjudged that the decree of the county court admitting to probate the alleged last will and testament be vacated, and the case be remitted to the county court for further proceedings therein in accordance with the judgment of the trial court; and from the judgment so entered the widow, *Nancy E. Baker,* brings this appeal.

It appears, and is undisputed, that Mr. Baker had resided in Wisconsin for more than fifty years; that he married his first wife soon after he came to the state; that he had by her four children,— two boys, George and *Adelbert,* and two

girls, Sarah and *Ruby;* that George and *Adelbert* both remained at home with him until they were over thirty years of age; that subsequently the two sons became residents of Missouri; that George died in Missouri in November, 1896, leaving five children, him surviving; that *Adelbert* lived there with his family at the time of his father's death, and had for more than ten years previously; that Sarah died in 1889, without issue; that *Ruby* was, at the time of her father's death, married and a resident of Minnesota, where she had lived with her family for several years; that in 1884 Mr. Baker's first wife, and the mother of all his children, died; that in 1888 he married the appellant, *Nancy E.*, but never had any children by her; that his eyesight had been poor for about five years before his death; that in 1895 he received an injury in his hip, by reason of his horse running away, which gave him a slow, shuffling gait; that his last sickness commenced in the latter part of December, 1896, or the first part of January, 1897; that January 10, 1897, he settled with the witness Eimer, a merchant who occupied a store building as his tenant, and on the next day, January 11, 1897, he made a new lease of the store to Eimer for the term of five years; that he then had sufficient mental capacity to do business; that his health gradually commenced to fail, especially in the latter part of January, 1897; that about February 1, 1897, he had become very weak, and failed to recognize the witness Wells, with whom he had long been well acquainted; that he gradually grew weaker from that time until the time of his death; that on Saturday, February 13, 1897, two days before making the alleged will, he recognized the witnesses Wells and Eimer with difficulty, and expressed a desire to make his will, and that he wanted his wife to have his home farm for her lifetime or as long as she remained his widow, together with the team and tools to carry on the farm; that the next day (Sunday) he was still weak, and for some time failed to recognize Eimer, and

when aroused he said he did not know where he was; that about 5 o'clock in the afternoon of the next day (Monday, February 15th), Mr. Baker signed a paper, all written in pencil by the appellant, *Nancy E. Baker*, except the clause relating to Heintz, which was underlined by the witness Martin at the request of Mr. Baker, and of which paper the following is a copy, to wit:

" Dennison Baker's last will and testament.

" The household goods and surroundings shall belong to my wife. The farm and farming utensils are to hers as long as she shall live or she remains my widow. The stock and barns shall be hers, and the farm shall be run as it is this year. All notes and mortgages she shall have full control of.

" That M. P. Heintz shall have the money on his mortgage, just as he has had it, as long as he wants it.

" August Eimer.        [Signed]    Dennison Baker.

" J. W. Martin,

" C. E. Annis."  .

It further appears that, in addition to such three subscribing witnesses and the appellant, there was present, at the time, the witness Wells, who expressly refused to sign the paper as a witness, after being requested by *Mrs. Baker*, on the ground that he did not think it was Mr. Baker's will; that at the foot of that paper so executed by Mr. Baker *Mrs. Baker* subsequently wrote, in pencil, the following memorandum: " Mr. Eimer asked if he understood it should be as long as she lives. Mr. Baker said ' Yes; as long as she lives, I want her to have it;' " that subsequently there was written, in pencil, on a separate piece of paper, a further memorandum, as follows, to wit: " Lastly, I give and bequeath to my *Nancy* all the rest of my real estate and personal property, of what nature or kind soever, and appoint her sole executor of my estate;" that about three hours after that first pencil paper was so signed by Mr.

Baker the alleged will in question was signed by him, and witnessed by J. W. Martin, C. E. Annis,—two of the persons who witnessed the pencil writing,—and also by one Rudolf Hermann.

That paper purports to give and devise to *Mrs. Baker* all of her husband's property, except some trifling legacies amounting to $700. In other words, as seems to have been conceded, that paper purported to give *Mrs. Baker* some $30,000 more than she would have obtained under the statutes. Mr. Baker was at the time about seventy-three years of age. He had, several years previously, given considerable money to each of his children. When the alleged will was drawn, all his children and grandchildren then living were either in Missouri or Minnesota. None of them had knowledge of his sickness until after the making of the alleged will, and then received the information from others than the appellant. It was not drawn by a person living near, who was in the habit of drawing his papers, but by the witness J. W. Martin, who lived two and one-half miles distant, and who admits that he had never drawn a will before, and but very few other papers. *Mrs. Baker* drew nearly all of the first paper, and manifestly had more or less to do about drawing the alleged will. She was the dominant force in the household at the time. Her sister was with her. Mr. Baker seems to have been in a passive condition, saying but little more than yes or no. After *Ruby* and *Adelbert* came, neither of them was left alone with their father, but *Mrs. Baker* or her sister was at all times present. Neither of them had any information respecting the alleged will until after the death of their father. After the arrival of *Adelbert, Mrs. Baker's* sister took the alleged will to the house of the witness Martin for safe keeping. The conduct of *Mrs. Baker*, and the circumstances surrounding the making and execution of the alleged will, were more or less suspicious, and called for explanation on

her part.　The jury were clearly justified in finding that the paper writing was not the voluntary act of Mr. Baker.

From a careful examination of the evidence, we are forced to the same conclusion reached by the trial court, and that is that the alleged will was either procured by undue influence, or that a bold fraud was practiced upon the deceased. This conclusion is supported by numerous adjudications of this court.　*Disch v. Timm,* 101 Wis. 179, and cases there cited.　The question involved was purely one of fact for the jury and trial court.　They decided it according to the clear preponderance of the evidence.

*By the Court.*— The judgment of the circuit court is affirmed.

BARDEEN, J., took no part.

The appellant moved for a rehearing and modification of the decision so that the same should provide that the costs and expenses of the appellant on the appeal to the supreme court, and a reasonable sum for counsel fees, be allowed by the county court, to be paid out of the estate.

The motion was denied April 4, 1899.