WILL OF WALLACE: TETZLAFF, Appellant, vs. RAY, by guardian *ad litem,* Respondent.

*November 7—December 4, 1928.*

For the appellant there was a brief by *Sullivan & Taugher* of Milwaukee, and oral argument by *James P. Taugher* and *John J. Sullivan.*

For the respondent there was a brief signed by *Pellette & Zillmer* of Milwaukee, attorneys for *Raymond T. Zillmer,* guardian *ad litem,* and oral argument by *Raymond T. Zillmer.*

STEVENS, J.   The testator was ninety-three years of age and infirm in body at the time the will in question was made. But there is no proof that her bodily infirmities had in any way affected her mind.   The trial court found, in accord with the undisputed proof, that deceased possessed the mental capacity to make a will.

A series of documents written by deceased's own hand established quite clearly that she not only knew what disposition she wanted to make of her property, but that she possessed the ability to draft legal documents that expressed that intent in language that would do credit to one skilled in drafting such instruments.   These documents show a fixed intent with reference to the disposition of her property which persisted over a period of nearly five years.   That intent was to divide all her property between her two sons, should they survive her, but not to give it to contestant and her other grandchildren, should the sons die before her death, because she expressly provided in each of these documents that they should become "null and void" in case either of the sons should die before her own death.   To make this intent clear she stated that, if either son should die, "I shall then make a new and different provision."

After the death of her two sons she carried out her previously declared intention to "make a new and different provision" by the execution of the will here in question.   This will is not an unnatural one.   The testatrix had been es-

tranged from the family of the contestant for some years. The mother of the contestant was not on speaking terms with the deceased and had visited her only twice in the eight years that she had been cared for by Mrs. Tetzlaff. Contestant and her mother had done nothing for the deceased during these years. Shortly before her death they removed to California to reside.

Mrs. Tetzlaff had received rather meager compensation for the care which she gave the deceased both day and night for a period of eight years. Mrs. Tetzlaff was not related by blood to the deceased. But she had been in the family of one of the sons of the deceased since she was a little girl. Later this son became an invalid and was cared for by Mrs. Tetzlaff during the last years of his life. Mrs. Tetzlaff gave the deceased the care which those who are related to her by ties of blood either refused or neglected to give her.

There is no proof that Mrs. Tetzlaff ever sought to influence the contestant in any way. There is no proof that Mrs. Tetzlaff had any part in the making of this will, except that, at testatrix's direction, she took the draft of the will which the deceased had written out in longhand to the lawyer who put it in the typewritten form in which it was offered for probate. Mrs. Tetzlaff had nothing to do with the execution of the will. She was not present when it was signed. She did not procure the subscribing witnesses. The deceased produced the will and asked two ladies who called to visit her to sign as subscribing witnesses.

By this will the deceased gave the sum of $2,000 to each of her grandchildren, despite the fact that the contestant and her brother had shown little, if any, interest in her welfare or evidenced affection for her.

Realizing that the trial court had the advantage of seeing and observing the witnesses, this court has searched the record in vain for proof to sustain the finding that the execution of the will was procured by the undue influence of Mrs. Tetzlaff. The most that the record discloses is that there

was a relation of trust and confidence and an opportunity to exercise influence. But there is absolutely no proof of any disposition to exercise such undue influence or that such influence was exercised, unless it can be found in the fact that testatrix gave the residue of her property to Mrs. Tetzlaff. At most this gift to Mrs. Tetzlaff may lead one to conjecture or to suspect that undue influence was used, but "undue influence 'cannot be presumed from conjecture or suspicion without reasonable and satisfactory proof of facts establishing the contrivance and undue influence. . . . It must be such an influence as to destroy the freedom of the testator's will, and thus render his act obviously more the offspring of the will of others than of his own. It must be an influence especially directed towards the object of procuring a will in favor of particular parties. . . . It must be such as was intended to mislead him to the extent of making a will essentially contrary to his duty; and it must have proved successful to some extent, certainly,' and 'must be such as in some degree to destroy the free agency of the testator, and constrain him to do not only what is against his will, but what he is unable to refuse or too weak to resist.' There must be proof that the act was obtained by importunity which could not be resisted; that it was done merely for the sake of peace, so that the motive was tantamount to force and fear." *McMaster v. Scriven,* 85 Wis. 162, 171, 55 N. W. 149.

Testatrix was of mature years and of sound mind. She had the right to make such disposition of her property by will as she saw fit. It is the duty of the courts to give effect to that will, because the contestant has not met the burden that rested upon her to establish the fact that the will was procured by undue influence of such a character that it destroyed the free agency of the testatrix and substituted for her intention that of Mrs. Tetzlaff. *Estate of Wegner,* 185 Wis. 407, 417, 201 N. W. 826.

The finding that this will was procured by the undue influence of Mrs. Tetzlaff is so clearly contrary to the great weight of the evidence that it must be set aside and the cause remanded with directions to admit the will to probate. Pursuant to the provisions of sec. 324.13 of the Statutes the appellant's attorneys are allowed the sum of $350 for their services in preparing the bill of exceptions, printed case and brief, and in presenting the case to this court, in addition to appellant's taxable costs and disbursements in this court, all such sums to be paid out of the estate of the deceased.

*By the Court.*—So ordered.