## IN RE ESTATE OF RASMUS MILLER.
### R. P. NELSON AND OTHERS v. MARIA FALLESEN.[1]

April 4, 1930.

Nos. 27,701, 27,702, 27,703.

[1]Reported in 230 N. W. 275.

*Nelson & Nelson,* for appellants.
*Leach & Leach,* for respondent.

HILTON, J.

These three cases are appeals from judgments. The first is from a judgment affirming an order of the probate court admitting the will of Rasmus Miller to probate; the second affirming an order appointing the executor of the estate of said Miller; and the third decreeing defendant, Maria Fallesen, the owner in fee of the real estate.

Rasmus Miller, a native of Denmark, came to this country at an early date. For a long time prior to his death on March 20, 1928, he was a resident of Blooming Prairie, Minnesota. He died at the age of 81, a single man, never having been married. By thrift and industry he had during his lifetime accumulated property worth between $30,000 and $40,000. He left surviving as his heirs at law the appellants here, nephew and nieces, being children of a deceased sister. He had no other known relatives. For more than 25 years prior to his death his home was managed and he was taken care of by two housekeepers: a Mrs. Lund until May, 1917, and from November 9, 1917, the respondent, Mrs. Maria Fallesen, occu-

pied that position. Mrs. Fallesen was a distant relative of Mrs. Lund and had a daughter Olga, at that time (in 1917) 18 years of age; she was frequently at the Miller home. He gave her an automobile that he owned, and she often acted as his driver. In 1918 Mr. Miller gave Mrs. Fallesen a $1,000 liberty bond.

Miller made a will on April 4, 1919, which was drawn by Peter Prahm, a life-long friend, who for six years had been register of deeds of Steele county and who was a frequent visitor at the Miller home. Mrs. Fallesen was a niece of Prahm. The will contained a bequest of $1,000 to Olga, $500 to a daughter of Mr. Prahm, and gave the remainder of his estate to Mrs. Fallesen. The will was properly drawn, executed and witnessed.

In December, 1926, Miller sold a farm that he owned to one Knudson for $14,000, of which $9,500 was paid in cash and the balance secured by a mortgage. The sale was a very advantageous one for Miller; he managed it himself and displayed marked ability therein. This money was placed in a bank in Miller's name and afterwards transferred to the joint account of Miller and Mrs. Fallesen. The mortgage was afterwards assigned to Mrs. Fallesen. Having been told by a neighbor that a will could easily be broken, Miller to accomplish his purpose, after a consultation with Prahm, transferred all his real estate to Mrs. Fallesen on August 4, 1927. On October 15, 1927, he held and actively attended to an auction sale of a part of his personal property. At the date of his death Mrs. Fallesen had been his housekeeper for 10 years, 4 months, and 11 days.

Appellants here contested the admission of the will to probate and instituted an action to have the deeds set aside. The grounds of their contentions were that Miller was not of sound mind and memory and was without testamentary capacity at the time of making and executing the will and deeds in question, and that the execution thereof had been procured by undue influence on the part of Mrs. Fallesen. The probate court as regards the will found those contentions unfounded. The district court on appeal reached the same conclusion as to the will and also as to the deeds.

The arrangement that Miller had with Mrs. Lund was that if she took care of him as long as he lived she should have all the property he died possessed of. She however preceded him in death. He was much distressed over her death and stated to numerous persons, who testified to that effect, that whoever he could get to take care of him until he died would receive all of his property. He made certain statements about his relatives indicating that he did not wish any of them to inherit any of his property. He frequently commented on the fact that Mrs. Fallesen was taking good care of him and evidenced complete satisfaction. There is no question but that the disposition of his property as confirmed by the judgments here appealed from carried out his expressed intentions and desires. The soundness of his mind and his competency to transact business and make the will and deeds were abundantly proved. There was no tangible evidence to the contrary. In fact the evidence is practically all one way. 6 Dunnell, Minn. Dig. (2 ed.) § 10211.

The fact that Mrs. Fallesen here occupied a position of trust and confidence towards Miller did not create a presumption that the will and deeds were induced by undue influence. The burden was on appellants to prove it. Mere opportunity therefor does not prove undue influence. In re Estate of Simmons, 156 Minn. 144, 194 N. W. 330, and cases cited. The evidence did not indicate, much less establish, that the making of the will and deed represented the mind and intent of Mrs. Fallesen and not that of Miller. Thill v. Freiermuth, 132 Minn. 242, 156 N. W. 260; 6 Dunnell, Minn. Dig. (2 ed.) §§ 10238, 10239. Appellants' attempts to draw inferences of undue influence from the circumstances disclosed by the evidence are unavailing. Had Mrs. Fallesen unduly influenced Miller to make the will in question, it is unreasonable to infer that he would have let the matter thus stand for over nine years without at least changing the will. As above indicated, his purpose for her to have all his property was confirmed by the deeds to the real estate which he executed.

The trial court could not well, on the state of the record, have found other than it did. Neither a deed properly executed and

delivered nor a will made in strict conformity with statutory requirements can be set aside on mere conjecture, guess work, or suspicion as to invalidity. To accomplish that purpose there must be something very substantial to warrant it. Nothing appears in the record indicating intimacy between Miller and these appellants. They paid no attention to him, and he paid no attention to them. A lively interest on their part was first indicated after his death.

The property owned by Miller was for his disposition as he might see fit. The arrangement he made was not an unreasonable or bad one as far as he was concerned. By it he obtained the comfort, care, and attention that he desired. The findings and conclusions of the trial court are here of controlling weight. 1 Dunnell, Minn. Dig. (2 ed.) § 411.

There are various assignments of error relative to the admission of evidence. We find no merit therein. It was claimed that testimony relative to the arrangement Miller had with Mrs. Lund was improperly admitted. A careful examination of the record convinces us to the contrary. It was important and competent. Appellants objected to the testimony of Mrs. Fallesen as to a conversation had with Miller after he had executed the deeds and delivered them to her. This evidence was offered and properly so on the express ground that it was laying a foundation for her testimony as to his capacity to transact business. In re Estate of Mumm, 177 Minn. 226, 225 N. W. 102, and cases cited. Its admission did not contravene the statute prohibiting testimony by an interested party of a conversation had with a deceased person. Mrs. Fallesen was permitted to state that after the deeds had been executed and delivered to her Miller told her to have the deeds recorded, and she stated to him that she would not do so at that time. She did not; they were not recorded until after his death. Under the circumstances here, even if the evidence was improperly admitted, it did not in any way prejudice appellants. Numerous cases cited by appellants state general propositions of law. Few, if any, of them are here applicable. Many are cases where trial courts or juries found that there had been undue influence and in

which the facts are clearly distinguishable from those in this case. A recent Wisconsin case is particularly in point. Will of Wallace, 197 Wis. 323, 222 N. W. 255.

Judgments affirmed.