ESTATE OF KNUTSON: GULDHAUG, Appellant, vs. MARTIN, Executor, Respondent.

*March 5—April 9, 1957.*

382

For the appellant there was a brief by *Harry D. Clarke* of Stoughton, and *Frederick F. Hillyer* of Madison, and oral argument by *Mr. Hillyer*.

For the respondent there was a brief and oral argument by *D. V. W. Beckwith* of Madison.

WINGERT, J. In a careful and thorough opinion the county court held that on the date the will was executed testatrix possessed testamentary capacity to make a will, that the will was not the result of undue influence, and that it was properly executed. Formal findings of fact to that effect were made. On examination of the record we are satisfied that none of the essential findings is contrary to the great weight and clear preponderance of the evidence, and that therefore the judgment admitting the will to probate must be affirmed. Indeed we consider that the trial court's findings are clearly supported by the evidence.

1. *Testamentary capacity.* There was testimony by the head nurse at the Skaalen Home, and by a cousin of testatrix who had looked after her financial affairs for some time prior to the making of the will, to the general effect that testatrix was senile, forgetful, confused, suspicious, unable to reason,

and did not understand what property she had or who her relatives were, and that her deterioration was progressive. None of that testimony was based on observation of the plaintiff on the day she gave instructions for the will or at the time she signed it. On the other hand, Attorney Knudson, who discussed the subject matter of the will and other affairs with testatrix on May 19th and also was present at the execution of the will on May 20th, testified that she discussed the disposition of her estate intelligently, discussed her relatives, and gave him the names and addresses of the beneficiaries, that her knowledge of her property was correct, and that he was satisfied that she was competent and had no doubt about it. Several other witnesses also testified that she was competent, including her physician, who witnessed the will, her pastor, another physician who examined her three weeks after the will was made in anticipation of a proposed guardianship, an experienced lawyer who interviewed her the following December at the instance of the court when she was under guardianship, and other witnesses.

The weight to be given to this conflicting testimony was for the trial court, and its finding of testamentary capacity is amply supported. Contestant had the burden of proving incapacity by clear and satisfactory evidence. *Estate of Scherrer,* 242 Wis. 211, 216, 7 N. W. (2d) 848.

The testimony of the witnesses who observed the condition of testatrix at the very time she made the will is entitled to great weight as compared with the evidence of mental infirmity at other times, since it is elementary that the question of competency is to be determined as of the time of the execution of the will; and in cases of senility or illness, mental capacity may differ greatly from time to time, even from day to day. *Estate of Fuller,* ante, pp. 1, 5, 81 N. W. (2d) 64; *Estate of Radel,* 248 Wis. 558, 564, 22 N. W. (2d) 475. Here the testimony of the scrivener was properly given great weight, since he discussed the affairs of testatrix with her at length and with professional under-

standing when she gave the instructions for the will, and he was present at its execution. *Estate of Kesich,* 244 Wis. 374, 383, 12 N. W. (2d) 688.

The infirmities of old age, such as forgetfulness, incoherence, eccentricity, and occasional inability to recognize acquaintances, do not necessarily establish want of testamentary capacity. *Will of Washburn,* 248 Wis. 467, 474, 22 N. W. (2d) 512; *Will of Grosse,* 208 Wis. 473, 479, 243 N. W. 465. The appointment of a guardian for testatrix two months after she made the will is not of controlling weight, not only because of the time difference, but for the further reason that a finding of incapacity to manage property sufficient to warrant guardianship does not necessarily negative testamentary capacity.

Contestant places great emphasis on a series of letters written by testatrix to him at frequent intervals during the first half of 1953, in which she constantly complained of forgetfulness, nervousness, and want of knowledge of her affairs, indicated that something unmentioned was upsetting her, and showed friendship for and confidence in contestant. Without going into detail, we do not consider that these letters demonstrate lack of testamentary capacity. Special emphasis is placed on one written by testatrix to contestant on May 28th, nine days after Mr. Knudson had drawn the will, in which she said she had not had anything to do with Knudson for a long time. A week later, however, she wrote Mr. Knudson asking him to keep the will in his possession, "and don't let Clarence know anything about it." The inference is permissible that instead of being completely confused, testatrix was deliberately trying to keep Clarence from suspecting that she had made a will.

*2. Undue influence.* Contestant argues that the will was the product of undue influence exerted by Marie Lageson and her husband. In her 1951 will, testatrix had given contestant preferred treatment and had excluded Mrs. Lageson. It is

claimed that the Lagesons were unfriendly to contestant, and persuaded testatrix to believe ill of him and cut him out and give them a share of the estate.

The ultimate facts to be proved in order to establish undue influence are (1) a person unquestionably subject to undue influence, (2) opportunity to exercise such influence and effect the wrongful purpose, (3) a disposition to influence unduly for the purpose of procuring improper favor, (4) a result clearly appearing to be the effect of the supposed influence. *Will of Winnemann,* 272 Wis. 643, 647, 76 N. W. (2d) 616.

The trial court found, with support in the evidence, that testatrix was unquestionably subject to undue influence, and that Mrs. Lageson had an opportunity to exercise undue influence; but considered that such opportunity was too remote in time from the actual conferences with the scrivener to meet the test. We do not pass upon the question of opportunity, for this branch of the case is amply disposed of by the court's remaining findings.

The trial court further found that there was insufficient evidence of a disposition on the part of the Lagesons to exercise undue influence on the testatrix, and that the will does not clearly appear to be the result of undue influence. Those findings were well warranted.

The evidence on the question of disposition to use undue influence hardly rises above the level of suspicion. There is no evidence that either of the Lagesons or anyone else attempted to persuade testatrix to make a new will or made any suggestions as to the terms of such will. Evidence that in the winter of 1953 and thereafter the Lagesons showed more interest in testatrix than formerly, visited her at the Skaalen Home (which seemed to upset her), invited her to visit them at their home, and on two occasions after the will was made went to a cousin's home and demanded papers belonging to testatrix, does not show a disposition to

influence her with respect to her will, let alone exercise improper influence. Undue influence is akin to fraud and an objector asserting it cannot prevail unless the proof thereof is clear and satisfactory. *Will of Winnemann,* 272 Wis. 643, 645, 76 N. W. (2d) 616. "Disposition" in the sense here used means something more than a mere desire to obtain a share in another's estate. It implies a willingness to do something wrong or unfair, and grasping or overreaching characteristics. *Will of Schaefer,* 207 Wis. 404, 415, 241 N. W. 382.

The fact that contestant, who had been included in former wills, was left out of this one while Mrs. Lageson, a sister, was reinstated as a beneficiary, is not a result clearly appearing to be the effect of undue influence. Neither the cutting out of an heir nor the giving of a share of the estate to the alleged influencer is *ipso facto* an unnatural disposition. *Will of Faulks,* 246 Wis. 319, 364, 17 N. W. (2d) 423; *Estate of Fuller,* ante, pp. 1, 11, 81 N. W. (2d) 64.

Where no fiduciary relation is involved, influence, to be "undue," must be such as to destroy the free volition of the testator to the extent that the will is more the offspring of another's will than his own. *Will of Wallace,* 197 Wis. 323, 326, 222 N. W. 255. Here the evidence shows that testatrix was displeased with certain activities or attitudes of the contestant, desired to leave him nothing, and so instructed the scrivener. She may also have felt that she had done enough for contestant by loaning him $8,000 without security, rejecting interest on the debt, and giving him $1,000 cash. We need not appraise the justice of her attitude toward him. As the trial court trenchantly remarked, "It is not the function of the court of probate to require a testatrix to show cause why her will was drafted as it was."

3. *Execution of will.* Three persons testified as to the execution of the will. Mrs. Martin, one of the attesting wit-

nesses, testified positively that she did not see testatrix sign the will, that Dr. Unterholzer was not even present when she signed, and that she did not see him sign. The doctor's memory was faulty, and his testimony contributed little. Attorney Knudson, who was present at the signing, testified positively and in detail that all formalities required by statute were complied with; that the testatrix, Mrs. Martin, Dr. Unterholzer, and he were all present together in the same room, that he, the attorney, made a statement as to the required formalities, that testatrix then signed the will in the presence of the other two witnesses, and that they then signed in her presence and in the presence of each other.

On this directly conflicting testimony as to facts essential to valid execution, the trial court found that the will was properly executed by the testatrix in the presence of both witnesses, who signed in her presence and in the presence of each other. That finding is fully supported by the testimony of Mr. Knudson, and is not against the great weight and clear preponderance of the evidence. It must therefore stand.

Contestant argues that the proponent of the will failed to meet his burden of proof that the will was properly executed, since he produced only one witness who testified to the necessary facts, while another witness testified with equal positiveness that the necessary facts did not exist. It is said that Mrs. Martin's testimony should be preferred because she was completely disinterested, whereas Mr. Knudson has a professional interest in having the will sustained.

The weight to be given to the conflicting testimony of the two witnesses was for the trial court. That court was warranted in believing Mr. Knudson, a prominent lawyer of thirty-four years' experience, as against Mrs. Martin, whose testimony contradicted recitals of the attestation clause which she signed, and was therefore to be received with caution. *Will of Frederiksen*, 246 Wis. 263, 271, 16 N. W. (2d) 819.

Having produced one witness whose testimony covered all essential points positively, and whom the trial court reasonably believed, proponent met his burden of proof. In the situation we have here, sufficiency of proof is not a matter of counting heads. It is not the number of witnesses that counts, but rather the quality of their testimony as weighed by the trier of fact.

*By the Court.*—Judgment affirmed.